IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KAROLYN KRUGER, M.D., CANDACE      )
CULTON, FRANCES BAILLIE,           )
EILEEN SCHNEIDER, JUDY LEWIS,      )
LINDA CHRISTENSEN, and             )
TERESA POWELL, individually        )
as representatives of a class      )
of similarly situated persons,     )
and on behalf of the Novant        )
Health Retirement Plus Plan,       )
                                   )
            Plaintiffs,            )
                                   )
     v.                            )         1:14CV208
                                   )
NOVANT HEALTH, INC.,               )
ADMINISTRATIVE COMMITTEE OF        )
NOVANT HEALTH, INC., NOVANT        )
HEALTH RETIREMENT PLAN             )
COMMITTEE, and JOHN DOES 1-40,     )
                                   )
            Defendants.            )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter comes before this court on the Motion to
Dismiss (Doc. 19) filed by Defendants Novant Health, Inc.,
Administrative Committee of Novant Health, Inc., and Novant
Health Retirement Plan Committee, pursuant to Rule 12(b)(6) of
the Federal Rules of Civil Procedure. Plaintiffs filed a
response (Doc. 26) and Defendants have replied (Docs. 33, 34).
This matter is now ripe for resolution, and for the reasons
stated herein, this court will deny Defendants' Motion.

# I.    BACKGROUND

## A.    The Parties

Karolyn Kruger, Candace Culton, Frances Baillie, Eileen Schneider, Judy Lewis, Linda Christensen, and Teresa Powell (collectively "Plaintiffs") filed the present class-action lawsuit on March 12, 2014, pursuant to 29 U.S.C. § 1132(a)(2) and (3)[1] on behalf of the Tax Deferred Savings Plan of Novant Health, Inc., and the Savings and Supplemental Retirement Plan of Novant Health, Inc. (collectively "the Plan"). Named as Defendants are: Novant Health, Inc. ("Novant"), Administrative Committee of Novant Health, Inc. ("Administrative Committee"), Novant Health Retirement Plan Committee ("Retirement Plan Committee") (collectively "Defendants"), and John Does 1-40.[2] (Complaint ("Compl.") (Doc. 1).) Plaintiffs, all former or current employees of Novant, are residents of North Carolina and are all participants in the Plan. (Id. at 3-4.) Novant is a North Carolina corporation comprised of member hospitals,

---

[1] 29 U.S.C. § 1132 (2012) is the Civil Enforcement Section of the Employee Retirement Income Security Program ("ERISA").

[2] John Does 1-20 are the individual members of the Administrative Committee and John Does 21-40 are the individual members of the Retirement Plan Committee. Plaintiffs do not know the identity of the individual John Does. (Compl. (Doc. 1) at 6.)

medical centers, and outpatient surgery centers throughout North Carolina, South Carolina, and parts of Virginia. (Id. at 4.)

###   B.   **The Plan**

The Plan is an Employee Retirement Income Security Program ("ERISA") governed individual account plan. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Doc. 20) at 6.)[3] Pursuant to ERISA, Novant is the sponsor of the Plan (29 U.S.C. § 1002(16)(B) (2012)), the administrator of the Plan (29 U.S.C. § 1002(16)(A)), and a party in interest to the Plan (29 U.S.C. § 1002(14)). (Compl. (Doc. 1) at 4.) The Plan is offered to Novant employees to manage their retirement savings. (Id. at 2.) The Plan is administered by the Administrative Committee. The Retirement Plan Committee is a committee appointed by Novant's board to oversee the investment options of the Plan. (Id. at 5-6.) Plaintiffs allege that all Defendants are Plan fiduciaries. (Id. at 4-6.) To date, Defendants have not denied their fiduciary status.

Great-West Life & Annuity Insurance Company ("Great-West") is a service provider to the Plan, providing both administrative and recordkeeping services. Great-West is compensated for said

---

[3]   All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

services by the Plan. (Id. at 8.)  D.L. Davis & Company, Inc.

("Davis") is a brokerage company founded by Derrick L. Davis

who, at all times relevant herein, served as the chief executive

officer and president of Davis. (Id.) Davis received payments

from the Plan for advisory services. (Id. at 9.)

Defendants determine what investment choices Plan

participants have as investment options. (Id.)  The investment

options in the two retirement vehicles that comprise the Plan

are identical, and participants are instructed to select their

investments for both plans. (Id. at 7.) Generally, the Tax

Deferred Savings Plan is the retirement plan designated for

participants' contributions through salary deferrals, and the

Savings and Supplemental Retirement Plan is the retirement plan

designated for the employer matching contributions. (Id.) In

2009, the Plan consisted of approximately 25,000 participants,

and the number of participants has not materially changed since

then. (Id.)

Despite little increase in the number of Plan participants,

the Plan's assets have grown consistently since 2008. In 2008,

the Plan's total assets were approximately $612 million. In

2009, the Plan's assets grew to over $940 million, an increase

of more than 54%. By 2012, the Plan's total assets had grown to

over $1.42 billion, an increase of over 128% from 2008. (Id. at 8.)

## C. **Factual Allegations**

Plaintiffs assert five causes of action alleging breach of fiduciary duties by Defendants in their payment of excessive fees stemming from (1) imprudent investments in unnecessarily expensive funds and (2) overpayment to two service providers, Great-West and Davis. (Id. at 2.) Specifically, Plaintiffs argue that Defendants breached their fiduciary duty when the Plan offered only retail class shares to participants when identical, less expensive, institutional class shares of the same funds were available. Plaintiffs allege that the Plan is comprised of a very large pool of assets and that retirement plans of such size have the ability to obtain institutional class shares of mutual funds. Despite this ability, each of the funds included in the Plan offers only retail class shares, which charge significantly higher fees than institutional shares for the same return on investment. (Id. at 9-11.)

Plaintiffs next assert that the increased assets in the Plan have greatly increased the amount of payment to the service providers, Great-West and Davis, in excess of what is reasonable for the services they provide. (Id. at 21-22, 25-26.) Plaintiffs further allege that the revenue-sharing setup of the Plan,

- 5 -

ostensibly used to defray administrative costs, is actually being used to provide additional payments in the form of "kickbacks" to Great-West and Davis. (Id. at 23, 26-27.) These costs are allegedly being paid by the Plan in spite of Defendants' repeated representations that Novant itself is responsible for the payment of administrative fees of the Plan. (Id. at 20.)

Novant informs Plan participants that they are entitled to obtain copies of Plan documents and information by making a written request to the Chairman of the Administrative Committee. (Id. at 9.) Plan participants should receive this requested information within 30 days. (Id.) Plaintiff Kruger made such a demand on January 27, 2014, but had not received any response when the Complaint in the current action was filed on March 12, 2014. (Id.) Therefore, Plaintiffs had no Plan documentation when this action was filed.

## II.  **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible provided the plaintiff provides enough factual content to enable

- 6 -

the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. (citing Trombly, 550 U.S. at 556).

Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 545, 570; see Iqbal, 556 U.S. at 678. Under Iqbal, the court performs a two-step analysis. First, it separates factual allegations from allegations not entitled to the assumption of truth (i.e., conclusory allegations, bare assertions amounting to nothing more than a "formulaic recitation of the elements"). Iqbal, 556 U.S. at 681 (quoting Trombly, 550 U.S. at 555). Second, it determines whether the factual allegations, which are accepted as true, "plausibly suggest an entitlement to relief." Id. "At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citing McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 327 (4th Cir. 1996)). "Nonetheless, the requirement of liberal construction does not

mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." Id. at 646.

## III. **ANALYSIS**

Plaintiffs assert five causes of action alleging breach of ERISA fiduciary duties by Defendants in their management of the Plan. This court takes each cause of action in turn to determine whether or not Plaintiffs have stated a claim.

### A. **Disloyalty and Imprudence as to Excessive Investment Options**

Plaintiffs contend that the Plan is invested in funds that result in the Plan overpaying millions of dollars in fees. (Compl. (Doc. 1) at 10.) Plaintiffs claim that when a plan is as large as Novant's, fiduciaries can leverage the asset size of a plan to obtain less expensive institutional rate funds, instead of the more expensive retail rate funds that the Plan currently is invested in. (Id.) Plaintiffs specifically allege that:

> Defendants breached their duties by retaining the higher fee share class investment options in the Plan when far lower cost funds with the identical managers, investments styles, and stocks were available.
>
> . . . Defendants breached their fiduciary duties by failing to consider those lower cost funds with the identical managers, investments styles, and stocks where available.

(Id. at 37.)[4]

Under ERISA, a fiduciary has a duty to operate "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). As the Fourth Circuit has maintained, "[t]he fiduciary obligations of the trustees to the participants and beneficiaries of [an ERISA] plan are . . . the highest known to the law." Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 356 (4th Cir. 2014), cert. denied, ____ U.S. ____, 135 S. Ct. 2887 (2015) (quoting Donovan v. Bierwirth, 680 F.2d 263, 272 n.8 (2d Cir. 1982)). The Fourth Circuit also stated:

> Congress enacted ERISA to protect "the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."

_____

[4] Plaintiffs assert several other ways that the Plan could potentially reduce fees by changing the funds it is invested in and changing other investment structures. (Compl. (Doc. 1) at 11-19.) However, relying only on the retail class funds versus institutional class funds argument, this court finds that Plaintiffs state an excessive fees breach claim sufficient to survive a motion to dismiss. Therefore, this court does not need to address other arguments regarding investment choices at this juncture.

- 9 -

Id. at 355 (quoting 29 U.S.C. § 1001(b)). The duty of a fiduciary to act with prudence includes a duty to "initially determine, and continue to monitor, the prudence of each investment option available to plan participants." DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 423 (4th Cir. 2007) (emphasis omitted).

Although the Fourth Circuit has not specifically addressed whether or not an excessive fees claim under ERISA can survive a motion to dismiss, other circuits have. Defendants rely on several circuit court decisions dismissing excessive fees claims to support their motion to dismiss. See Loomis v. Exelon Corp., 658 F.3d 667 (7th Cir. 2011) (holding no fiduciary breach where plaintiffs argued plan should only offer institutional funds); Renfro v. Unisys Corp., 671 F.3d 314, 327 (3d Cir. 2011) (holding no breach where Unisys did not offer exclusively retail class funds, in fact "[t]he Unisys plan contains a variety of investment options . . . ."); Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009) (finding no excessive fee breach when there was a wide range of expense ratios among the twenty mutual funds offered and the 2,500 other funds available to participants online). Specifically, Defendants cite these cases to assert:

> Both the use and fees of the retail funds
> challenged in this case are consistent with those in

- 10 -

*Hecker*, *Renfro*, and *Loomis*. As in those cases, Novant
offers a "sufficient mix" of 23 different investment
options which spanned the risk/return spectrum. The
Plan presented participants with the opportunity to
invest in mutual funds with expense ratios ranging
from 0.42% to 1.51%, which is consistent with the
range of fees that Circuit courts have found
reasonable as a matter of law. This alone dooms
plaintiffs' investment fee challenges.

(Defs.' Mem. (Doc. 20) at 16 (citations omitted).)

In affirming that the *Hecker* plaintiffs failed to state a
claim to survive a motion to dismiss, the Seventh Circuit
focused on the number of investment options available to plan
participants and the range of fees for those options.

We turn next to plaintiffs' contention that Deere
violated its fiduciary duty by selecting investment
options with excessive fees. In our view, the
undisputed facts leave no room for doubt that the
Deere Plans offered a sufficient mix of investments
for their participants. Thus, even if, as plaintiffs
urge, there is a fiduciary duty on the part of a
company offering a plan to furnish an acceptable array
of investment vehicles, no rational trier of fact
could find, on the basis of the facts alleged in this
Complaint, that Deere failed to satisfy that duty. As
the district court pointed out, there was a wide range
of expense ratios among the twenty Fidelity mutual
funds and the 2,500 other funds available through
BrokerageLink. At the low end, the expense ratio was
.07%; at the high end, it was just over 1%.
Importantly, all of these funds were also offered to
investors in the general public, and so the expense
ratios necessarily were set against the backdrop of
market competition. The fact that it is possible that
some other funds might have had even lower ratios is
beside the point; nothing in ERISA requires every
fiduciary to scour the market to find and offer the
cheapest possible fund (which might, of course, be
plagued by other problems).

- 11 -

Hecker, 556 F.3d at 586. The Hecker analysis suggests two factors were controlling – the expense ratio ranges and the fact that the funds were offered to the general public, implicating "the backdrop of market competition." Id. Relying upon the Hecker analysis, the Loomis and Renfro cases also dismissed excessive fees claims in which the range of fees was similar to Hecker. See Loomis, 658 F.3d at 669 (0.03% to 0.096%), and Renfro, 671 F.3d at 319 (0.1% to 1.21%). Both the Seventh Circuit in Loomis[5] and the Third Circuit in Renfro[6] held that the large, diversified menu of options available to plan participants countered any claim of breach of fiduciary duty.

[5] The Seventh Circuit held that "[s]imilar arguments [by plaintiffs] were made in Hecker but did not prevail. Deere offered 25 retail mutual funds with expense ratios from 0.07% to just over 1% annually. We held that as a matter of law that was an acceptable array of investment options." Loomis, 658 F.3d at 670.

[6] The Third Circuit held that:

We agree with our sister circuits' approach to evaluating these claims. An ERISA defined contribution plan is designed to offer participants meaningful choices about how to invest their retirement savings. Accordingly, we hold the range of investment options and the characteristics of those included options — including the risk profiles, investment strategies, and associated fees — are highly relevant and readily ascertainable facts against which the plausibility of claims challenging the overall composition of a plan's mix and range of investment options should be measured.

Renfro, 671 F.3d at 327.

- 12 -

Present Plaintiffs suggest the argument in the current action differs from the cases cited by Defendants in that,

> Plaintiffs do not allege that the mere presence of any retail mutual fund in their Plan is imprudent. Rather, [Plaintiffs] allege that the absence of any institutional share class of the same mutual funds shows a complete disregard of those cheaper but otherwise identical share classes.

(Pls.' Opp'n to Mot. to Dismiss ("Pls.' Resp.") (Doc. 26) at 13.)

This court is not persuaded the Hecker analysis controls this case at the pleadings stage, where all inferences must be drawn in favor of the non-moving party. First, Hecker seems to hold that a fees range of 0.07% to just over 1%, when the funds were also offered to the general public, is reasonable as a matter of law, and further that a fiduciary has no duty "to scour the market to find and offer the cheapest possible fund." Hecker, 556 F.3d at 586. By contrast, here, the fees offered by Defendants range from 0.425 to 1.51%, a notably different range from that offered in Hecker and related cases, particularly when looking at overall investment amounts in the millions of dollars. Further, Plaintiffs have alleged these fees are excessive, not by virtue of their percentage as in Hecker and its progeny, but because there are different versions of the same investment vehicle available to the Plan that have lesser fees. "Novant Defendants breached their fiduciary duties by

- 13 -

failing to consider those lower cost funds with the identical
managers, investments styles, and stocks where available."
(Compl. (Doc. 1) at 37.) Under the prudent man standard, without
evidence, this court finds it difficult to conclude as a matter
of law that these allegations are not sufficient to state a
claim.  While it may be a close call, all reasonable inferences
must be drawn in favor of Plaintiffs.

Furthermore, it may be reasonable to infer that these
retail investment options are available to the public and
therefore set against the backdrop of market competition.
However, Plaintiffs are not arguing that Defendants had a duty
to scour the market to find and offer any cheaper investment.
Instead, Plaintiffs allege that "lower cost funds with the
identical managers, investments styles, and stocks" should have
been considered by the Plan. (Id.) Plaintiffs assert that the
Plan is comprised of a very large pool of assets and that
retirement plans of such size have the ability to obtain
institutional class shares of mutual funds. Despite this
ability, each of the funds included in the Plan offers only
retail class shares, which charge significantly higher fees than
institutional shares for the same return on investment. (Id. at
9-11.)  This may or may not be true, and may or may not be
required under the applicable "prudent man" standard, but this

court is not persuaded this is not sufficient to state a plausible claim.

Plaintiffs argue that another circuit case, Braden v. Wal-Mart Stores, Inc., 588 F.3d 585 (8th Cir. 2009), is more analogous to the present facts than the cases cited by Defendants. In Braden, the Eighth Circuit found that the plaintiff stated enough of a breach of fiduciary duty claim under ERISA to survive a motion to dismiss where,

> The complaint allege[d] that the Plan comprises a very large pool of assets, that the 401(k) marketplace is highly competitive, and that retirement plans of such size consequently have the ability to obtain institutional class shares of mutual funds. Despite this ability, according to the allegations of the complaint, each of the ten funds included in the Plan offers only retail class shares, which charge significantly higher fees than institutional shares for the same return on investment.

Braden, 588 F.3d at 595. Defendants assert that Braden is distinguishable from the present facts because Braden depended on the "kickback" allegation. (Defs.' Mem. (Doc. 20) at 15 n.5.) This court disagrees. In Braden, the court held that the plaintiff's claim of fiduciary breach stemming from the use of the retail class shares by the plan when institutional options were available was enough to survive a motion to dismiss. The Braden court explained that the plaintiff satisfied pleading requirements where the complaint alleged that: (1) the 401(k) plan was comprised of a very large asset pool, (2) large

- 15 -

retirement plans have the ability to utilize institutional

shares instead of retail shares, and (3) the plan's funds only

included retail class shares which charge significantly higher

fees than institutional shares for the same return on

investment.[7] Braden, 588 F.3d at 595. The Braden court did not

require the kickback allegation to survive a motion to dismiss,

as Defendants assert. (Defs.' Mem. (Doc. 20) at 15.) Addressing

the kickback allegation in the Rule 12(b)(6) context, the Eighth

Circuit noted:

> Braden could not possibly show at this stage in the
> litigation that the revenue sharing payments were
> unreasonable in proportion to the services rendered
> because the trust agreement between Wal-Mart and
> Merrill Lynch required the amounts of the payments to
> be kept secret. It would be perverse to require
> plaintiffs bringing prohibited transaction claims to
> plead facts that remain in the sole control of the
> parties who stand accused of wrongdoing.

---

[7] The Braden court addressed other allegations, but the fact
that the enrichment of the trustee at the expense of the plan is
considered after the court had already decided that the
plaintiff had sufficiently alleged the process was flawed
indicates that the court did not give it the great weight that
present Defendants would have this court accord to this
distinction. See Braden, 588 F.3d at 596. Furthermore, the
Braden court characterized the payments to the trustee as
revenue sharing that was "not made in exchange for services
rendered." Id. Given that the amounts paid to Great-West and
Davis have been characterized as "revenue sharing" that
Plaintiffs allege were not accompanied by an equivalent value of
services from the two providers, this court fails to see the
distinction between Braden and this case that Defendants attempt
to draw. Braden did not conclusively find that a breach had been
committed, only that the plaintiff had produced sufficient
allegations to "state a claim for breach of fiduciary duty." Id.

<u>Braden</u>, 588 F.3d at 602 (citation omitted).

In light of the present facts, this court is persuaded that the <u>Braden</u> analysis agrees with Fourth Circuit precedent that fiduciaries of an ERISA plan are responsible for monitoring "the prudence of each investment option available to plan participants." <u>DiFelice</u>, 497 F.3d at 423 (emphasis omitted). This court finds <u>Braden</u> persuasive on the issue of what is required for a plaintiff to state an excessive fees claim for breach of fiduciary duty under ERISA at the motion to dismiss stage. In <u>Braden</u>, as in the present action, the plaintiff alleged that the plan fiduciaries were utilizing imprudently expensive investment options to the detriment of the plan. Following this logic, present Plaintiffs have stated enough of a claim for breach of fiduciary duty to survive Defendants' motion

- 17 -

to dismiss based on the imprudent retention of the retail class funds when institutional class shares were available.[8]

## B. __Disloyalty and Imprudence as to Excessive Payments to Great-West__

Plaintiffs next assert that Defendants breached their fiduciary duties by making excessive payments to service provider Great-West for recordkeeping services. Specifically, Plaintiffs allege:

> Defendants failed to monitor Great-West's compensation to ensure that those payments provided no more than reasonable compensation, failed to recover for the Plan the amount of revenue Great-West received that exceeded a reasonable fee for the type of services it provided, and failed to put the recordkeeping services out for competitive bidding.

(Compl. (Doc. 1) at 41.)

As with liability for the selection and maintenance of retail class funds over institutional class funds, the duty of the Plan fiduciaries with respect to the recordkeeping fees paid

---

[8] Defendants' arguments in support of their motion to dismiss are not limited to those addressed in this Order. Defendants also argue that the Internal Revenue Code bars certain contentions as a matter of law, that the comparison to Vanguard Fund fees is inapt, and that revenue sharing is not accounted for in Plaintiffs' allegations. (Defs.' Mem. (Doc. 20) at 7.) These are all strong arguments proffered by Defendants. However, it does appear to this court, under the prudent man standard, that these arguments are better resolved at a later stage of the proceedings in light of the fact this court finds the allegations sufficient to allow the excessive fees claim to move forward. This court will therefore defer ruling on these arguments to summary judgment, (see Fed. R. Civ. P. 12(i)), and will deny the motion to dismiss without prejudice.

by the Plan is the "prudent man" standard. <u>See</u> 29 U.S.C. § 1104(a)(1)(B) (2012). Furthermore, plan fiduciaries are obligated to continue to monitor the financial state of the plan and ensure that the investments are prudent. <u>DiFelice v. U.S. Airways, Inc.</u>, 497 F.3d 410, 423 (4th Cir. 2007). Though the Fourth Circuit has not yet reached the question of when recordkeeping fees become imprudent, case law from other jurisdictions indicates that recordkeeping fees can rise to a level to be adjudged imprudent. <u>See, e.g.</u>, <u>Tussey v. ABB, Inc.</u>, 746 F.3d 327, 335–37 (8th Cir.), <u>cert. denied</u>, ____ U.S. ____, 135 S. Ct. 477 (2014) (affirming the lower court's findings that the plan's fiduciaries were liable for their failure to monitor recordkeeping costs, despite the presence of revenue sharing offsets); <u>George v. Kraft Foods Glob., Inc.</u>, 641 F.3d 786, 798– 800 (7th Cir. 2011) (holding that, based upon the opinions of experts in the field that recordkeeping costs should have been less, "a trier of fact could reasonably conclude that defendants did not satisfy their duty to ensure that [the recordkeeper's] fees were reasonable"); <u>Wsol v. Fiduciary Mgmt. Assocs., Inc.</u>, 266 F.3d 654, 657–58 (7th Cir. 2001) (upholding the prudence of a fund selection tainted by ethical problems solely on the basis that the rates charged were standard rates and not excessive).

While Tussey features "significant allegations of wrongdoing" which the Eighth Circuit found to be important in their decision, Tussey, 746 F.3d at 336, the Seventh Circuit did not describe any such wrongdoing in George, 641 F.3d at 798-800, nor was the lack of such wrongdoing dispositive to the fees issue in Wsol, 266 F.3d at 657-58. This court is not determining whether or not the revenue-sharing plan constitutes a wrongful "kickback" as Plaintiffs allege.[9] See Tussey, 746 F.3d at 336 (positively summarizing the district court's finding that revenue sharing is a "common and acceptable investment industry practice[] that frequently inure[s] to the benefit of ERISA plans")(internal quotation marks omitted). But see Braden, 588 F.3d at 590-91, 600-01 (finding that plaintiff had sufficiently alleged that the revenue-sharing scheme employed by Wal-Mart was "not reasonable compensation for services rendered by [the trustee], but rather were kickbacks paid by the mutual fund companies in exchange for inclusion of their funds in the [p]lan" at the motion to dismiss stage).

---

[9] Despite the fact that the revenue sharing may not constitute an illegal kickback, this court notes that Plaintiffs allege Defendants repeatedly represented that the administrative costs of the Plan would not be paid by the Plan itself (Compl. (Doc. 1) at 30), yet Defendants' brief claims that the expenses were being paid by the Plan and later partly defrayed by revenue sharing. (Defs.' Mem. (Doc. 20) at 19-21.)

However, even without the kickback allegations, Plaintiffs state a plausible claim that the failure to monitor the sudden spike in recordkeeping fees rendered their judgment imprudent. Like the George plaintiffs, present Plaintiffs allege that the Plan's recordkeeping fees exceed a prudent amount. Whether or not those fees were actually imprudent is a question of fact and not one that can be resolved on the pleadings. George, 641 F.3d at 800 (finding that "a trier of fact could reasonably conclude that defendants did not satisfy their duty to ensure that [the recordkeeper's] fees were reasonable").

Defendants argue that the $35 per account recordkeeping fee Plaintiffs cite as the industry average is insufficient to allege an unreasonable fee without an accounting for how Plaintiffs arrived at this figure. (Defs.' Mem. (Doc. 20) at 21-22.) However, the mere addition of a figure for context does not alone dispose of Plaintiffs' allegations. Plaintiffs are not claiming that $35 is the only reasonable fee. Instead, Plaintiffs use the $35 figure to bolster their argument that "the compensation [that recordkeepers] received from the Plan increased dramatically, such that a material change occurred in the administration of the Plan and the level of payment of these services." (Compl. (Doc. 1) at 40.) Consequently, Defendants' failure to monitor the Plan to rectify such overpayment resulted

- 21 -

in a loss to the Plan of substantial assets. (<u>Id.</u> at 40-41.)
This is sufficient to raise an allegation of breach of fiduciary
duty under <u>George</u>, which this court finds persuasive. While
Defendants claim that Plaintiffs have not alleged facts
regarding why the amount of the recordkeeping fees are
excessive, the services provided, or how the fees charged to the
Plan were excessive in light of those services, this court finds
that those are the types of facts warranting discovery, and,
therefore, dismissal at this stage is not appropriate.

### C. <u>Disloyalty and Imprudence as to Excessive Payments to Davis</u>

Plaintiffs next allege that Defendants breached their
fiduciary duties when they allowed the Plan to compensate Davis
at unreasonable and excessive levels. Further, Plaintiffs allege
that Defendants "failed to have a prudent process for evaluating
the reasonableness" of Davis' compensation. (Compl. (Doc. 1) at
42-44.) Defendants assert that "[t]hese allegations are not
plausibly pled in light of the D.L. Davis service agreement with
the Plan." (Defs.' Mem. (Doc. 20) at 24.) This court is not
persuaded by Defendants' argument on this point. At this stage
in the proceedings, it is impossible to deduce whether or not
Davis' compensation was reasonable without further discovery
into facts about Davis, including what exactly Davis did, how

exactly Davis was paid, and whether Defendants evaluated Davis'

compensation prudently.[10]

### D. <u>Failure to Monitor Fiduciaries and Knowing Participation in Breaches of Fiduciary Duties</u>

Plaintiffs' fourth and fifth claims of failure to monitor

and knowing participation are derivative claims, intrinsically

related to the first three claims. This court does not find

dismissal of Counts I, II, or III warranted at this time, and

thus declines to dismiss Plaintiffs' remaining claims.

---

[10] Plaintiffs argue that several documents pertaining to Davis' compensation and duties are inadmissible in the Rule 12(b)(6) motion stage. (Pls.' Resp. (Doc. 26) at 14-15.) The cases cited by Defendants to support their assertion that this court can consider these documents in this stage of the proceedings do not persuade this court. Specifically, <u>Haberland v. Bulkeley</u>, 896 F. Supp. 2d 410 (E.D.N.C. 2012), which Defendants rely on, allowed the court to "consider documents that are referenced in and central to the complaint, and the authenticity of which neither party questions." <u>Haberland</u>, 896 F. Supp. 2d at 419. The <u>Haberland</u> court used this logic to allow consideration of documents filed with the Securities and Exchange Commission and referenced specifically in the complaint. Here, the documents Defendants would like this court to consider were not referred to in the complaint and are not public filings. Therefore, this court finds it improper to consider these documents, like the Davis service agreement, at this time. <u>See also</u> <u>Phillips v. LCI Int'l, Inc.</u>, 190 F.3d 609, 618 (4th Cir. 1999) (holding that the court may consider an article not attached to the complaint in determining whether to dismiss the complaint because the article was integral to and explicitly relied on in the complaint and because the plaintiffs did not challenge its authenticity).

IV.  **CONCLUSION**

For the reasons set forth herein, **IT IS HEREBY ORDERED** that

Defendants' Motion to Dismiss (Doc. 19) is **DENIED.**

This the 17th day of September, 2015.

_____
                    United States District Judge