# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Karolyn Kruger, M.D., *et al.*

                Plaintiffs,

     v.

Novant Health, Inc., *et al*.

                Defendants.

Case No. 1:14-cv-208
Judge William Osteen, Jr.
Magistrate Judge Joi Elizabeth Peake

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES,
## AND CASE CONTRIBUTION AWARDS FOR NAMED PLAINTIFFS

# TABLE OF CONTENTS

I.    Background and Procedural History. .................................................................... 2

II.   Argument. ............................................................................................................ 5

    A.  Plaintiffs' attorneys' fees. ........................................................................... 5

        1.   Class Counsel obtained substantial relief benefitting tens of thousands of class members. ................................................................... 7

        2.   There have been no objections to the settlement or requested fee. ................. 8

        3.   Class Counsel's unparalleled skill in 401(k) fiduciary breach class actions is unparalleled led to an efficient conclusion to this case. .................. 8

        4.   The legal and factual issues in this case were difficult, complex, and novel, requiring a substantial expenditure of Class Counsel's time and money without any certainty of success. ....................................................... 11

        5.   Class Counsel incurred risk of nonpayment. ................................................. 12

        6.   Class counsel expended significant time and resources. ............................... 12

        7.   Fee awards in similar cases supports Class Counsel's requested attorney fee award here. ............................................................................................... 13

        8.   A lodestar cross-check confirms the fee is appropriate. ................................ 14

    B.  The Court should also award reimbursement of Class Counsel's costs. ............. 19

    C.  The Court should award named plaintiff case contribution awards. .................... 20

III.  Conclusion. ......................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Lockheed Martin Corp.*,
No. 06-701, 2015 U.S.Dist.LEXIS 93206 (S.D.Ill. July 17, 2015) ................... 10, 13, 16

*Abbott v. Lockheed Martin Corp.*,
No. 06-701, Doc. 497 (S.D.Ill. Apr. 14, 2015) ............................................................... 7

*Alexander S. v. Boyd*,
929 F.Supp. 925 (D.S.C. 1995) ................................................................................... 15

*Archbold v. Wells Fargo Bank, N.A.*,
No. 13-24599, 2015 U.S.Dist.LEXIS 92855 (S.D.W.Va. July 14, 2015) ...................... 6

*Barber v. Kimbrell's, Inc.*,
577 F.2d 216 (4th Cir. 1978) ........................................................................................ 6

*Beesley v. Int'l Paper Co.*,
No. 06-703, 2014 U.S.Dist.LEXIS 12037 (S.D.Ill. Jan. 31, 2014) ............... 7, 10, 13, 20

*Blanchard v. Bergeron*,
489 U.S. 87 (1989) ........................................................................................................ 7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ...................................................................................................... 1

*Clark v. Experian Info. Solutions, Inc.*,
Nos. 00-1217-22, 00-1218-22, 00-1219-22, 2004 U.S.Dist. LEXIS 32063 (D.S.C.
Apr. 22, 2004) ........................................................................................................... 6, 7

*Conley v. Sears, Roebuck & Co.*,
222 B.R. 181 (D.Mass. 1998) ..................................................................................... 18

*Cosgrove v. Sullivan*,
759 F.Supp. 166 (S.D.N.Y. 1991) ............................................................................... 18

*Decohen v. Abbasi, LLC*,
299 F.R.D. 469 (D.Md. 2014) .............................................................................. 7, 14, 17

*Deem v. Ames True Temper, Inc.*,
No. 10-1339, 2013 U.S.Dist.LEXIS 72981 (S.D.W.Va. May 23, 2013) ................. 6, 14

*DeLoach v. Lorillard Tobacco Co.*,
391 F.3d 551 (4th Cir. 2004) ...................................................................................... 18

*DeLoach v. Philip Morris Cos.*,
No. 00-1235, 2003 U.S.Dist. LEXIS 23240 (M.S.N.C. Dec. 19, 2003) ...................... 18

*DeWitt v. Darlington Co.*,
No. 11-740, 2013 U.S.Dist.LEXIS 172624 (D.S.C. Dec. 6, 2013) .......................... 14, 15

*Domonosoke v. Bank of Am., N.A.*,
790 F. Supp. 2d 466 (W.D.Va. 2011) ............................................................... 6

*George v. Kraft Foods Global, Inc.*,
Nos. 08-3899, 07-1713, 2012 U.S.Dist.LEXIS 166816, at *8–9, *11 (N.D.Ill. June
26, 2012) ................................................................................................ 14

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ................................................................ 2, 9, 12, 17

*Helmick v. Columbia Gas Transmission*,
No. 07-743, 2010 U.S.Dist.LEXIS 65808 (S.D.W.Va. July 1, 2010) ........................... 14

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002)........................................................................ 18

*In re Cardinal Health Inc. Sec. Litigs.*,
528 F.Supp.2d 752 (S.D. Ohio 2007) .............................................................. 18

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ......................................................................... 6

*In re Rite Aid Corp. Sec. Litig.*,
362 F.Supp.2d 587 (E.D.Pa. 2005) ................................................................. 18

*In re RJR Nabisco Sec. Litig.*,
No. 88-905, 1992 U.S.Dist.LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) ........................... 18

*Ingram v. Coca-Cola Co.*,
200 F.R.D. 685 (N.D.Ga. 2001) .................................................................... 18

*Jones v. Dominion Res. Servs.*,
601 F. Supp. 2d 756 (S.D.W.Va. 2009).......................................................... 5, 18

*Krueger v. Ameriprise Fin., Inc.*,
No. 11-2781, 2015 U.S.Dist.LEXIS 91385 (D.Minn. July 13, 2015) ........................... 13

*Maley v. Del Global Techs. Corp.*,
186 F.Supp.2d 358 (S.D.N.Y. 2002) ............................................................... 18

*Marks Constr. Co. v. Huntington Nat'l Bank*,
No. 05-73, 2010 U.S.Dist.LEXIS 89186 (S.D.W.Va. Aug. 27, 2010)......................... 15

*Martin v. Caterpillar, Inc.*,
No. 07-1009, 2010 U.S.Dist.LEXIS 82350 (C.D.Ill. Aug. 12, 2010) .................... 12, 14

*Muhammad v. Nat'l City Mortg., Inc.*,
No. 07-423, 2008 U.S.Dist.LEXIS 103534 (S.D.W.Va. Dec. 19, 2008) ...................... 6

*New Eng. Carpenters Health Ben. Fund v. First Databank*,
  No. 05-11148, 2009 U.S.Dist.LEXIS 68419 (D.Mass. Aug. 3, 2009) ......................... 18

*Newby v. Enron Corp.*,
  586 F.Supp.2d 732 (S.D.Tex. 2008) ........................................................................... 18

*Nieman v. Duke Energy Corp.*,
  No. 12-456, 2015 U.S.Dist.LEXIS 148260 (W.D.N.C. Nov. 2, 2015) ......................... 18

*Nolte v. Cigna Corp.*,
  No. 07-2046, 2013 U.S.Dist.LEXIS 184622 (C.D.Ill Oct. 15, 2013) ........................... 11

*Phillips v. Triad Guar., Inc.*,
  No. 09-71, 2016 U.S.Dist.LEXIS 60960 (M.D.N.C. May 9, 2016) .............................. 15

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011) ................................................................................ 3, 9, 12

*Roberts v. Texaco, Inc.*,
  979 F.Supp. 185 (S.D.N.Y. 1997) .............................................................................. 18

*Savani  v. URS Prof'l Solutions LLC*,
  121 F.Supp.3d 564 (D.S.C. 2015) ............................................................. 2, 5, 17, 20

*Silverman v. Motoral Solutions, Inc.*,
  739 F.3d 956 (7th Cir. 2013) ..................................................................................... 11

*Smith  v. Krispy Kreme Doughnut Corp.*,
  No. 05-187, 2007 U.S.Dist.LEXIS 2392 (M.D.N.C. Jan. 10, 2007) ............. 6, 15, 17, 20

*Smith v. Res-Care, Inc.*,
  No. 13-5211, 2015 U.S.Dist.LEXIS 145266 (S.D.W.Va. Oct. 27, 2015) ....................... 6

*Spano v. Boeing Co.*,
  No. 06-743, Doc. 587 (S.D.Ill. Mar. 31, 2016) ............................................. 9, 15, 16, 19

*Temp. Servs. v. Am. Int'l Grp., Inc.*,
  No. 08-271, 2012 U.S.Dist. LEXIS 86474 (D.S.C. June 22, 2012) .............................. 14

*Tibble v. Edison Int'l*,
  135 S.Ct. 1823 (2015) .................................................................................................. 5

*Tussey v. ABB Inc.*,
  No. 06-cv-4305 (W.D.Mo.) ........................................................................................... 5

*Tussey v. ABB, Inc.*,
  746 F.3d 327 (8th Cir. 2014), *cert. denied*, 135 S.Ct. 477 (2014) ................................. 9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ......................................................................................... 18

v

*Will v. Gen. Dynamics Corp.*,
No. 06-698, 2010 U.S.Dist.LEXIS 123349 (S.D.Ill. Nov. 22, 2010)...................... 10, 14

**Rules**

Fed.R.Civ.P. 23(h) ................................................................................................................. 1

**Other Authorities**

Floyd Norris, *What a 401(k) Plan Really Owes Employees*, New York Times (Oct. 16, 2014) ................................................................................................................... 9

Linda Stern, Stern Advice – How 401(k) Lawsuits Are Bolstering Your Retirement Plan, REUTERS (Nov. 5, 2013) ................................................................................... 10

MANUAL FOR COMPLEX LITIGATION (Fourth) (2004) ......................................................... 7

Martha Neil, *Top Partner Billing Rates at BigLaw Firms Approach $1,500 per Hour*," ABA Journal (Feb. 8, 2016) .............................................................................. 16

Natalie Rodriguez, *Meet the $2,000 an Hour Attorney*, Law360 (June 11, 2015) .......... 16

Peter Brady, *Marginal Tax Rates and the Benefits of Tax Deferral,* Investment Company Institute, Sept. 17, 2013 .................................................................................. 7

Theodore Eisenberg and Geoffery P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. EMPIRICAL LEGAL STUD. 27 (2004) .................. 14

The settlement in this case is an exceptional result for the class. The $32 million settlement fund is very substantial monetary compensation to employees and retirees of Novant Health, Inc. The settlement's unprecedented affirmative relief – valued at nearly $70 million – also ensures that class members will have a high-quality, state of the art 401(k) plan for years to come. All told, the benefit to the class is $101 million. In achieving this extraordinary result, Class Counsel leveraged its unparalleled, decade-long experience starting with initiating 401(k) fee litigation, took on immense risk, and litigated this case for over two years without compensation or any guarantee of payment.

This outstanding settlement did not arise from luck or happenstance. Rather, it was reached because of Class Counsel's hard-earned reputation as the foremost attorneys in 401(k) excessive fee litigation – a field Class Counsel created – and its diligent and effective work in this case. Had it not been for Class Counsel's efforts in this case and the many other cases it has brought before, the class very likely would not have obtained a settlement anywhere near as valuable. And whatever settlement it did get would have almost certainly come after many more years of costly litigation, which would have driven up expenses and eaten into the class's recovery. In short, no other law firm could have achieved this remarkable result for the class, and certainly not as quickly. *See* Declaration of Karen Ferguson ("Ferguson Decl.") ¶26.

Under the "common fund" doctrine, Class Counsel is entitled to an award of reasonable attorneys' fees from the settlement proceeds for obtaining recovery for the benefit of the class. Fed.R.Civ.P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Indeed, in this Circuit, "the percentage-of-recovery approach is not only permitted, but is

1

the preferred approach to determine attorney's fees." *Savani v. URS Prof'l Solutions LLC*, 121 F.Supp.3d 564, 568 (D.S.C. 2015). One-third of the monetary relief alone is an appropriate award in light of Class Counsel's substantial work in securing a large recovery for the class and its well-documented, pioneering role in this area of litigation. It is also consistent with fee orders of numerous other federal courts who have witnessed Class Counsel's singular efforts and the staggering risk of such unique cases. And importantly, it is the amount agreed to by each of the named plaintiffs. Declaration of Jerome Schlichter ("Schlichter Decl.") ¶21. Because the non-monetary relief has real and substantial economic value to class members, the requested fee actually represents much less than one-third of the total value of the settlement. Indeed, it is approximately just 10% of the settlement's total value.

Accordingly, the Court should award Class Counsel a fee of $10,666,666 (one-third of the monetary recovery). The Court should also award reimbursement of costs and expenses Class Counsel incurred in litigating this matter in the amount of $68,887.43, and a case contribution award to each named Plaintiff of $25,000 for their service in this case.

## I.    Background and Procedural History.

As detailed in the declaration of Troy A. Doles ("Doles Decl."), Class Counsel's work on this case began months before the complaint was actually filed. Class Counsel spent hundreds of hours investigating publicly-filed documents and documents obtained and provided by the Plaintiffs. Doles Decl. ¶8. Plaintiffs filed this action on March 12, 2014, and Defendant moved to dismiss the complaint, raising arguments based on the decisions in *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) and *Renfro v. Unisys Corp.*, 671

2

F.3d 314 (3d Cir. 2011), cases Class Counsel litigated previously. Doles Decl. ¶9. The Court ultimately denied Defendants' motion to dismiss, but noted it was a "close call" and that many of Defendant's arguments would be considered (and may prevail) at summary judgment. Doc. 39 at 14, 18 n.8.

While the motion to dismiss was still under advisement, the parties entered into settlement discussions. Doles Decl. ¶10. Prior to mediation, Class Counsel spent hundreds of hours examining nearly twenty thousand pages of documents produced by Defendant, and an additional ten thousand pages of public documents Class Counsel obtained by in-person visits to local and regional state and county offices. *Id*. ¶¶10–11. This material was used to develop Plaintiffs' case, which was then outlined in an all-day mediation that ended without a settlement. The parties then spent four more months in lengthy additional negotiations. Finally, on November 9, 2015, the parties reached a settlement. *Id*. ¶12.

The settlement Class Counsel obtained confers extraordinary and encompassing relief for the class. In addition to the $32 million settlement amount, Class Counsel secured for the class affirmative relief unprecedented in the decade it has been litigating these cases. Defendant has agreed to:

1)      conclude a comprehensive request for proposal ("RFP") competitive bidding process, conducted and led by an outside consultant, for recordkeeping, investment consulting and participant education services for the Plans;

2)      engage a mutually agreed upon Independent Consultant to assess the RFP process and Defendants' anticipated selection of service providers for the Plans;

3

3)      ensure that the Plans' administrative service providers are not reimbursed for their services based on a percentage-of-plan-assets basis;

4)      review all current investment options in the Plans and revise the investment options, as needed, ensuring that those options are selected or retained for the exclusive best interests of the Plans' participants;

5)      have the Independent Consultant review the investment option selection process and provide recommendations, if necessary;

6)      have the Independent Consultant conduct an annual review of Novant's management of the Plans for four years;

7)      remove Davis and related entities from any involvement with the Plans;

8)      remove Davis and related entities from Novant employee benefit plans;

9)      not enter into any new real estate or business relationships with Davis and related entities;

10)     not offer any Mass Mutual investments in the Plans or any other investment that provides compensation to Davis and related entities;

11)     provide accurate communications to participants in the Plans;

12)     not offer any brokerage services to the Plans; and,

13)     adopt a new investment policy statement to ensure that the Plans are operated for the exclusive best interests of the Plans' participants.

The value of the reduction in administrative and investment management fees alone is conservatively estimated at close to $70 million. Declaration of Dr. Stewart Brown ("Brown Decl.") ¶11. Thus, the settlement's true value to the class exceeds $101 million.

4

## II. Argument.

Class Counsel is entitled to a reasonable fee award from the common fund, and one-third of the monetary portion of the recovery is reasonable in this case. And considering the value of the affirmative relief, as is required, Class Counsel's fee request is actually much less than one-third of the value of the settlement. Indeed, based on a total value of $101 million, Class Counsel's fee request of $10,666,666 is just over 10% of the recovery. The reasonableness of the fee request is further shown by the enormous risk of non-payment and excellent result for the class. Class Counsel, when no other firm in the country had pursued excessive 401(k) fee claims, pioneered and pursued these untested legal theories through years of litigation dating back to 2006. And Class Counsel litigated the only full case to go to trial on excessive 401(k) fees.[1] It pushed other cases to the brink of trial against formidable opponents with substantial defenses in order to obtain substantial settlements for class members throughout the country. It also litigated the landmark case of *Tibble v. Edison Int'l*, 135 S.Ct. 1823 (2015) – the first and only 401(k) fee case to be heard by the Supreme Court – where it won a unanimous 9-0 verdict.

### A. Plaintiffs' attorneys' fees.

As noted above, in this Circuit, "the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees." *Savani*, 121 F.Supp.3d at 568.[2] This Court has recognized that "in a[n] [ERISA] common fund case

---

[1] *Tussey v. ABB Inc.*, No. 06-cv-4305 (W.D.Mo.).

[2] *See also Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756 (S.D.W.Va. 2009)("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases.").

5

such as this, a reasonable fee is normally a percentage of the Class recovery." *Smith v. Krispy Kreme Doughnut Corp.*, No. 05-187, 2007 U.S.Dist.LEXIS 2392, at *3 (M.D.N.C. Jan. 10, 2007). In determining the reasonableness of class counsel's fee award, courts in this Circuit follow the factors identified in the Third Circuit's decision *In re Cendant Corp. Litig.*, 264 F.3d 201, 283 (3d Cir. 2001):[3] (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Id.* Applying these factors to this

---

[3] *See, e.g.*, *Smith v. Res-Care, Inc.*, No. 13-5211, 2015 U.S.Dist.LEXIS 145266, at *25 (S.D.W.Va. Oct. 27, 2015); *Archbold v. Wells Fargo Bank, N.A.*, No. 13-24599, 2015 U.S.Dist.LEXIS 92855, at *11-12 (S.D.W.Va. July 14, 2015); *Deem v. Ames True Temper, Inc.*, No. 10-1339, 2013 U.S.Dist.LEXIS 72981, at *15 (S.D.W.Va. May 23, 2013); *Muhammad v. Nat'l City Mortg., Inc.*, No. 07-423, 2008 U.S.Dist.LEXIS 103534, at *21-22 (S.D.W.Va. Dec. 19, 2008).

While courts in this circuit have also applied the twelve factors noted in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978), "there is some question as to whether the factors from *Barber* … also apply to the determination of attorney's fees under the percentage method." *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 475 n.11 (W.D.Va. 2011). The *Barber* factors primarily "relate to the assessment of fees under a fee-shifting statute, not under a common fund framework," *Clark v. Experian Info. Solutions, Inc.*, Nos. 00-1217-22, 00-1218-22, 00-1219-22, 2004 U.S.Dist. LEXIS 32063, at *59 (D.S.C. Apr. 22, 2004), and thus can be inapposite when evaluating the fee award in a class action. Courts also recognize that *Barber* "can result in double counting of the same factor" and has "led to abuses, including, *inter alia*, encouraging counsel to expend excessive time, to delay settlement, and to inflate their hours and rates." *Id.* at *59, *60. But, "[u]nder either set of factors, the court's determination . . . is the same." *Domonoske*, 790 F. Supp. 2d at 475 n.11; *Clark*, 2004 U.S.Dist.LEXIS 32063, at *61 (noting that the factors of *Barber* and *Cendant* "are overlapping").

6

case demonstrates that the requested award is fair, reasonable, and clearly warranted.

### 1. Class Counsel obtained substantial relief benefitting tens of thousands of class members.

The $32 million in monetary compensation is an excellent result for the class (estimated at 70,683 members) and for this novel area of litigation. Adding more value, the settlement provides for current participants to receive their distributions directly into their accounts tax deferred and gives former participants the right to direct their distribution into a tax-deferred vehicle, such as an IRA. The Investment Company Institute estimates that the benefit of tax deferral for 20 years is an additional 18.6%,[4] so the actual value to the class of the monetary portion of the settlement is $37,952,000.

The court also must consider both the "valuable non-monetary and monetary relief obtained," particularly where the "non-monetary relief would not have been available outside the settlement." *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 481 (D.Md. 2014).[5] Here, the affirmative relief is not only extraordinary; it is more extensive relief than Class Counsel has obtained in any case in the decade it has been litigating these cases.

---

[4] *Abbott v. Lockheed Martin Corp.*, No. 06-701, Doc. 497 at 37 (S.D.Ill. Apr. 14, 2015)(citing Peter Brady, *Marginal Tax Rates and the Benefits of Tax Deferral,* Investment Company Institute, Sept. 17, 2013, available at http://www.ici.org/viewpoints/view_13_marginal_tax_and_deferral).

[5] *See also Clark*, 2004 U.S. Dist. LEXIS 32063, at *54 (recognizing that benefits to class members included "significant monetary *and* non-monetary value")(emphasis added); *accord Beesley v. Int'l Paper Co.*, No. 06-703, 2014 U.S.Dist.LEXIS 12037, at *5–6 (S.D.Ill. Jan. 31, 2014)("A court must also consider the substantial affirmative relief when evaluating the overall benefit to the class. . . . [T]his Court acknowledges the importance of taking the affirmative relief into account, in addition to the monetary relief, so as to encourage attorneys to obtain effective affirmative relief.")(citing MANUAL FOR COMPLEX LITIGATION (Fourth) §21.71 (2004)); *cf. Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (cautioning against an "undesirable emphasis" on monetary "damages" that might "short-change efforts to seek effective injunctive or declaratory relief").

Schlichter Decl. ¶19. Moreover, this relief will continue to protect class members for four years after final approval. The practical impact of this affirmative relief is that class members are provided a state-of-the-art retirement plan with fiduciary best practices assured. *See* the Declarations of Roger Levy and the Centre for Fiduciary Excellence.[6]

This affirmative relief pushes the value of this settlement to $101 million. Dr. Stewart Brown, a nationally recognized economist and authority on investment costs, has provided the Court with an estimate of the value of the fee reductions and costs savings class members in the Retirement Plus Plan alone can expect to enjoy as a result of Class Counsel's effort. Based on the reductions in investment management fees and administrative fees, the benefit to the class is estimated at $69 million. Brown Decl. ¶11. Having committed to these practices for a four-year period, it is highly unlikely Defendant would discontinue them. Thus, the value of the enhanced returns to the Plan actually exceeds the value as calculated by Dr. Brown because those changes will likely continue indefinitely.

### 2. There have been no objections to the settlement or requested fee.

Approximately 70,000 notices of the settlement were mailed to class members on July 11, 2016. Since then, Class Counsel has received calls from absent class members inquiring about the settlement, but has not received any complaints about its terms or Class Counsel's requested fee. The objection deadline is August 24, 2016. Schlichter Decl. ¶27.

### 3. Class Counsel's unparalleled skill in 401(k) fiduciary breach class actions is unparalleled led to an efficient conclusion to this case.

Before 2006, neither the Department of Labor nor any private firm had ever brought

---

[6] *See also* Declaration of Mary Ellen Signorille ("Signorille Decl.") ¶13.

a case alleging excessive fees in a 401(k) plan. *Spano v. Boeing Co.*, No. 06-743, Doc. 587, at 4 (S.D.Ill. Mar. 31, 2016). Class Counsel pioneered excessive fee litigation in 401(k) plans,[7] and since then has been "at the forefront of 401(k) excessive fee litigation." Signorille Decl. ¶9. Even in an ordinary ERISA fiduciary breach case, establishing liability is exceedingly difficult. In 401(k) fee cases, the law was undeveloped, and even if plaintiffs proved a fiduciary breach, the issues of causation and the proper measure of damages also were hotly contested. *See Tussey v. ABB, Inc.*, 746 F.3d 327, 339 (8th Cir. 2014), *cert. denied*, 135 S.Ct. 477 (2014). Defendants won outright in multiple 401(k) cases brought by Class Counsel. *See, e.g.*, *Hecker*, 556 F.3d 575; *Renfro*, 671 F.3d 314.

In the face of this united opposition, Class Counsel persevered and obtained settlements for various classes. Judges in other fiduciary breach cases settled by Class Counsel have commented on Class Counsel's success in pursuing claims and obtaining favorable settlements in this newly-created, complex area of the law. In approving fees of one-third of the monetary recovery in a similar case, U.S. District Court Judge G. Patrick Murphy recognized Class Counsel's exceptional efforts:

> Schlichter, Bogard & Denton's work throughout this litigation illustrates an exceptional example of a private attorney general risking large sums of money and investing many thousands of hours for the benefit of employees and retirees. … Class Counsel performed substantial work…, investigating the facts, examining documents, and consulting and paying experts to determine whether it was viable. … Litigating the case required Class Counsel to be of the highest caliber and committed to the interests of the participants and beneficiaries of the General Dynamics 401(k) Plans.

---

[7] Floyd Norris, *What a 401(k) Plan Really Owes Employees*, New York Times (Oct. 16, 2014), http://www.nytimes.com/2014/10/17/business/what-a-401-k-plan-really-owes-employees.html.

*Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 U.S.Dist.LEXIS 123349, at *8–9 (S.D.Ill. Nov. 22, 2010). U.S. District Court Judge David R. Herndon echoed those thoughts in approving fees of one-third of the monetary recovery in a similar settlement, explaining that Class Counsel "[l]itigat[ed] this case against formidable defendants and their sophisticated attorneys," which "required Class Counsel to demonstrate extraordinary skill and determination." *Beesley*, 2014 U.S.Dist.LEXIS 12037, at *8. And Chief Judge Michael J. Reagan of the Southern District of Illinois has likewise noted Class Counsel's "exceptional commitment and perseverance in representing employees and retirees seeking to improve their retirement plans." *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 U.S.Dist.LEXIS 93206, at *4 (S.D.Ill. July 17, 2015).[8]

Class Counsel's efforts have also lowered costs for workers and retirees throughout the United States. *See, e.g.*, Linda Stern, Stern Advice – How 401(k) Lawsuits Are Bolstering Your Retirement Plan, REUTERS (Nov. 5, 2013)(fee litigation brought by Class Counsel has had a "humongous" impact, according to CEO of 401(k) plan analysis firm Brightscope, Inc.).[9] The AARP similarly notes that "[t]his case and other similar cases brought by [Class Counsel] have contributed to measurable reductions in fees paid by 401(k) plan participants throughout the United States, through heightened awareness and scrutiny of fees, self-dealing, and imprudent investment options in 401(k) plans." Signo-

---

[8] *See also Spano*, Doc. 587, at 5 (Rosenstengel, D.J.)("Schlichter, Bogard & Denton added great value to the Class throughout the litigation through the persistence and skill of their attorneys."); *Nolte v. Cigna Corp.*, No. 07-2046, 2013 U.S.Dist.LEXIS 184622, at *8 (C.D.Ill Oct. 15, 2013)(describing Class Counsel as the "preeminent firm in 401(k) fee litigation," and noting that it has "invested such massive resources and persevered in the face of the enormous risks of representing employees and retirees in this area").

[9] http://www.reuters.com/article/us-column-stern-advice-idUSBRE9A40S320131105.

rille Decl. ¶12. And in *Nolte v. Cigna*, a similar case, U.S. District Court Judge Harold A.

Baker observed of Class Counsel herein (while approving a one-third fee award):

> Class Counsel's enforcement of ERISA's fiduciary obligations has contributed to rapid reductions in the level of 401(k) recordkeeping fees paid across the country. The law firm Schlichter, Bogard & Denton is the leader in 401(k) fee litigation. One independent investment advisory company, NEPC, has found that 401(k) recordkeeping fees have dropped $38 per account per year since Class counsel filed their first 401(k) fee cases in 2006. They attribute the fee reductions to improved fee disclosure requirements from the Department of Labor and attention brought by 401(k) fee litigation. The Department of Labor reports an estimated 73 million accounts in the United States. <u>Accordingly, the fee reduction attributed to Schlichter, Bogard & Denton's fee litigation and the Department of Labor's fee disclosure regulations approach $2.8 billion in annual savings for American workers and retirees</u>.

2013 U.S.Dist.LEXIS 184622, at*5–6 (emphasis added)(internal citations omitted).

### 4. The legal and factual issues in this case were difficult, complex, and novel, requiring a substantial expenditure of Class Counsel's time and money without any certainty of success.

ERISA 401(k) fiduciary breach class actions are extremely complex, uncertain, sharply contested, and often protracted. They require a willingness by counsel to risk very significant amounts of time and money. Declaration of Thomas Theado ("Theado Decl.") ¶12. The fact that Class Counsel has been virtually alone in handling ERISA fiduciary breach cases of this scope further weighs in favor of the requested award. Signorille Decl. ¶9. "Lack of competition not only implies a higher fee but also suggests that most members of the ... bar saw this litigation as too risky for their practices." *Silverman v. Motoral Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013). "The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Id*.

11

In awarding Class Counsel one-third of the monetary portion of the settlement in a similar case, the Honorable U.S. District Judge Joe Billy McDade observed that this litigation is "not only dependent on the statute but also on various regulations that implement ERISA," and thus is "relatively unique with limited case authority in support." *Martin v. Caterpillar, Inc*., No. 07-1009, 2010 U.S.Dist.LEXIS 82350 at *7 (C.D.Ill. Aug. 12, 2010). As in *Martin*, the class settlement here "represents a significant boon to class members in light of the complexity of this litigation, the potential for protracted litigation, and the strength of the available defenses recognized in *Hecker*." *Id*.

### 5. Class Counsel incurred risk of nonpayment.

The fact that Class Counsel "pioneered" this area of litigation nearly a decade ago and remains the leading authority on 401(k) fee cases is a testament to the staggering risk in bringing such cases. Here, Novant asserted substantial defenses to each of Plaintiffs' claims. Doc. 20. This includes Defendants' argument, based on *Hecker*, 556 F.3d at 586 and *Renfro*, 671 F.3d at 327, that there could be no breach of fiduciary duty because it offered a mix of retail and non-retail funds in the Plan. Doc. 39 at 10–14. While the Court ultimately denied the argument *at the pleadings stage*, it made clear that the decision was a "close call" and that evidence obtained through discovery may lead to a different result. *Id*. at 14. Even if liability had been established, Defendants had viable arguments that the damages should be limited. Thus, recovery at trial was far from certain.

### 6. Class counsel expended significant time and resources.

To date, Class Counsel has spent over 3,200 hours of attorney time and almost 300 hours of legal assistant time litigating this case. A breakdown of these hours by attorney

12

experience is attached. See Declaration of Sheri O'Gorman ("O'Gorman Decl.") ¶2. In addition, Class Counsel expects to spend another 200 hours over the next several months administering the settlement, along with approximately 200 hours in the next four years – 50 hours per year – to monitor Section 10 of the Settlement Agreement with no expectation of, or request for, additional fees. Class Counsel has also undertaken the risk of paying half of the settlement's costs incurred, including the notice, if the settlement fails for any reason. Further, if there is a dispute regarding Defendant's compliance with the terms of the settlement, Class Counsel reasonably expects its additional time to bring an enforcement action (which it would do without compensation) to total over 1,000 hours.

### 7. Fee awards in similar cases supports Class Counsel's requested attorney fee award here.

Courts have consistently awarded Class Counsel a fee of 33 1/3 % in numerous other 401(k) excessive fee settlements:[10]

| Case | Fee % |
|------|-------|
| *Spano v. Boeing Co.*, No. 06-cv-743, Doc. 587, at 4 (S.D.Ill. Mar. 31, 2016) | 33.3% |
| *Krueger v. Ameriprise Fin., Inc.,* No. 11-2781, 2015 U.S.Dist.LEXIS 91385, at *8 (D.Minn. July 13, 2015) | 33.3% |
| *Abbott v Lockheed Martin Corp.*, No. 06-701, 2015 U.S.Dist.LEXIS 93206, at *7 (S.D.Ill. July 17, 2015) | 33.3% |
| *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 U.S.Dist.LEXIS 12037, at *7 (S.D.Ill. Jan. 31, 2014) | 33.33% |
| *Nolte v. Cigna Corp.*, No. 07-2046, 2013 U.S.Dist.LEXIS 184622, at *8–9 (C.D.Ill. Oct. 15, 2013) | 33.33% |

---

[10] Each of the named plaintiffs in this case agreed to a one-third contingency fee. Schlichter Decl. ¶21. Contingency fee arrangements are consistent with this area of practice. Theado Decl. ¶16.

13

| Case | Fee % |
|---|---|
| *George v. Kraft Foods Global, Inc.*, Nos. 08-3899, 07-1713, 2012 U.S.Dist.LEXIS 166816, at *8–9, *11 (N.D.Ill. June 26, 2012) | 33.33% |
| *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 U.S.Dist.LEXIS 123349, at *9 (S.D.Ill. Nov. 22, 2010) | 33.33% |
| *Martin v. Caterpillar Inc.*, No. 07-1009, 2010 U.S.Dist.LEXIS 145111, at *9–11 (C.D.Ill. Sept. 10, 2010) | 33.33% |

And in this Circuit, courts have frequently awarded 33 1/3% of the settlement common fund in cases that were nowhere near as cutting edge as this one. *See, e.g.*, *Decohen*, 299 F.R.D. at 481-83 (approving award of one-third of common fund); *DeWitt v. Darlington Co.*, No. 11-740, 2013 U.S.Dist.LEXIS 172624, at *25 (D.S.C. Dec. 6, 2013) ("One-third of the recovery appears to be a fairly common percentage in contingency cases[.]").[11] A one-third fee is not merely permissible in this case, it is appropriate.

### 8. A lodestar cross-check confirms the fee is appropriate.

#### a. The lodestar multiplier is appropriate to compensate Class Counsel for its efforts and the risk it undertook.

Because courts in the Fourth Circuit generally favor the percentage-of-fund method for awarding fees in common fund cases, "[i]t is not necessary for the Court to conduct a

---

[11] *See also Deem*, 2013 U.S.Dist.LEXIS 72981, at *9 ("The requested award of one-third of the common fund, plus costs, is reasonable[.]"); *Temp. Servs. v. Am. Int'l Grp., Inc.*, No. 08-271, 2012 U.S.Dist. LEXIS 86474, at *22-23 (D.S.C. June 22, 2012)(one-third fee was "well within the range of what is customarily awarded in settlement class actions"); *Helmick v. Columbia Gas Transmission*, No. 07-743, 2010 U.S.Dist.LEXIS 65808, at *15 (S.D.W.Va. July 1, 2010)(one-third award was "a reasonable fee for Class Counsels' work"); *cf.* Theodore Eisenberg and Geoffery P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. EMPIRICAL LEGAL STUD. 27, 35 (2004) ("Substantial empirical evidence indicates that a one-third fee is a common benchmark in private contingency fee cases.").

14

lodestar analysis[.]" *Smith*, 2007 U.S.Dist.LEXIS 2392, at *9. Courts in this Circuit use the lodestar method, if at all, simply as a "'cross-check' to ensure that the percentage award is fair and reasonable." *DeWitt*, U.S.Dist.LEXIS 172624, at *20. In this case, a lodestar cross-check demonstrates that Class Counsel's requested fee is appropriate.

A lodestar is calculated by "determin[ing] the hours reasonably expended by counsel," and then "multiply[ing] that figure by a reasonable hourly rate." *Phillips v. Triad Guar., Inc.*, No. 09-71, 2016 U.S.Dist.LEXIS 60960, at *6 (M.D.N.C. May 9, 2016). This rate should be in line with the market rate for "lawyers of reasonably comparable skill, experience and reputation." *Alexander S. v. Boyd*, 929 F.Supp. 925, 936 (D.S.C. 1995). Because 401(k) excessive fee litigation is so complex and specialized, the "market" is nationwide. Indeed, national rates were used by the court in each of the cases cited in the chart on pages 13 and 14, *supra*. The "reasonable hourly rate" is "a fee rate based on the current market or by using the historical fee rate with reasonable interest added." *Marks Constr. Co. v. Huntington Nat'l Bank*, No. 05-73, 2010 U.S.Dist.LEXIS 89186, at *28 (S.D.W.Va. Aug. 27, 2010)(internal quotations and citations omitted).

To date, Class Counsel has spent 3,270.00 hours of attorney time, along with 282.60 hours of legal assistant time, litigating this case. It conservatively estimates spending another 200 attorney hours between now and final approval of the settlement, as well as 200 attorney hours administering and monitoring the settlement. A breakdown of these hours by attorney experience is attached. O'Gorman Decl., ¶2; Doles Decl. ¶¶18, 25. Class Counsel works solely on a contingent fee basis. Just four months ago, in a similar 401(k) excessive fee case handled by Class Counsel, *Spano*, the Southern District of Illinois

15

made findings of reasonable rates in 2016 for Class Counsel and that national rates should be used. Doc. 587 at 6–7 ("the reasonable hourly rate for Class Counsel's services" was $998/hour for attorneys with at least 25 years of experience, $850/hour for attorneys with 15–24 years of experience, $612/hour for attorneys with 5–14 years of experience, $460/hour for attorneys with 2–4 years of experience, $309/hour for Paralegals and Law Clerks, and $190/hour for Legal Assistants).[12] Given the close similarities between the *Spano* case and this one, Class Counsel being the same as here, and how recently that fee was awarded, the same rates are appropriate.

These rates are not only in line with Class Counsel's recent fee awards, but are below the rates of highly skilled attorneys nationwide. It has become commonplace for leading attorneys to charge a much higher rate than the highest rate in *Spano* – $1,000–$1,500 per hour[13] – and rates for attorneys in specialized fields have reached $2,000 per hour.[14] ERISA litigation "is a highly complex and quickly-evolving area of the law" that is

---

[12] These rates represent a modest 3% increase from the rates approved the year before in *Abbott v. Lockheed Martin Corp.*, another 401(k) case handled by Class Counsel. 2015 U.S. Dist.LEXIS 93206, at *12.

[13] Martha Neil, *Top Partner Billing Rates at BigLaw Firms Approach $1,500 per Hour*," ABA Journal (Feb. 8, 2016), http://www.abajournal.com/news/article/top _partner_billing_rates_at_ biglaw_firms_nudge_1500_per_hour ("Although a billable rate of $1,000 per hour was newsworthy only five years ago, top partners at the nation's biggest and best-known corporate law firms are now billing at rates nudging $1,500 per hour.").

[14] Natalie Rodriguez, *Meet the $2,000 an Hour Attorney*, Law360 (June 11, 2015), http://www.law360.com/articles/804421 ("It was just five years ago that the industry was stunned by the Wall Street Journal revelation that some top-tier attorneys had broken the $1,000 per hour benchmark. Then, earlier this year, BTI Consulting Group found that a handful of in-house counsel had paid as much as $2,000 per hour, after discounts, to attorneys in the past year. Several other in-house counsel, meanwhile, had paid highs of $1,900 per hour or $1,800 per hour.").

"viewed as economically and logistically unattractive to any but the most experienced and specialized counsel," *Smith*, 2007 U.S.Dist.LEXIS 2392, at *5, *8, and thus is one such field for which the top attorneys command top rates. Class Counsel is the preeminent firm in this field and brought this type of action before anyone else did. The rates are therefore reasonable, given the specialized area of law, Class Counsel's creation of the field of 401(k) excessive fee litigation, and its skill, reputation, and expertise.

Using these rates, the lodestar fee is $2,891,175.70. However, in cases where "the risks of the litigation are immense and [there is a] risk of receiving little or no recovery," like this one, the Court must apply a risk multiplier to compensate the attorneys for the risk of nonpayment in the event the litigation were unsuccessful. *Savani*, 121 F.Supp.3d at 572. Here, Class Counsel assumed an enormous risk of non-payment, particularly in light of the novel nature of this case when it was filed and adverse precedent such as *Hecker*.[15]

Class Counsel's requested fee of $10,666,666 is just 3.69 times the lodestar. This is squarely within the realm of reasonableness, as "[c]ourts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorney's fee." *Decohen*, 299 F.R.D. at 483 (approving lodestar multiplier of 3.9). Courts both within this Circuit

---

[15] Proving breach of fiduciary duty in an ERISA case is inherently difficult. *See supra* at 9. Here, Defendants raised numerous defenses in its motion to dismiss, only some of which the Court actually addressed, leaving the remainder for summary judgment. Doc. 39, at 18 n.8. The Court specifically noted that there were "strong arguments" that could be raised again following discovery. And Defendants only agreed to settle after Plaintiffs won a hard-fought motion, followed by mediation and months of protracted negotiations thereafter. Thus, survival of Defendants' motion for summary judgment – let alone prevailing at trial – was far from certain.

17

and across the country routinely approve fee awards with higher lodestar multipliers.[16]

### b. Class Counsel should not be punished for its efficiency and reputation.

Class counsel should not be penalized for its pioneering work and track record, both of which played a significant role in settling this case early. The lodestar method has rightly been criticized for placing too heavy an emphasis on the amount of time spent, which incentivizes attorneys to "pad" their hours rather than achieving efficient results for the class. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005)(lodestar method "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits")(alterations in original)(citations and internal quotations omitted). Here, Class Counsel's diligent efforts and sterling reputation in past cases

---

[16] *See Nieman v. Duke Energy Corp.*, No. 12-456, 2015 U.S.Dist.LEXIS 148260, at *4 (W.D.N.C. Nov. 2, 2015)("A multiplies [sic] of 4.5 would, in the circumstances of this case, be inappropriately too low."); *Jones*, 601 F.Supp.2d at 766 (approving lodestar multiplier up to 4.3); *DeLoach v. Philip Morris Cos.*, No. 00-1235, 2003 U.S.Dist. LEXIS 23240, at *38 (M.S.N.C. Dec. 19, 2003)(lodestar multiplier of 4.45 "represent[ed] a reasonable fee for the services provided"), *rev'd on other grounds, sub. nom. DeLoach v. Lorillard Tobacco Co.*, 391 F.3d 551 (4th Cir. 2004); *see also New Eng. Carpenters Health Ben. Fund v. First Databank*, No. 05-11148, 2009 U.S.Dist.LEXIS 68419, at *10 (D.Mass. Aug. 3, 2009) (multiplier of 8.3); *Newby v. Enron Corp.*, 586 F.Supp.2d 732, 741–42 (S.D.Tex. 2008)(multiplier of 5.2); *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 768 (S.D. Ohio 2007)(multiplier of six); *In re Rite Aid Corp. Sec. Litig.*, 362 F.Supp.2d 587, 589 (E.D.Pa. 2005)(multiplier of 6.9); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002)(multiplier of 4.3); *Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 371 (S.D.N.Y. 2002)(multiplier of 4.65); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D.Ga. 2001)(multiplier up to four); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D.Mass. 1998)(multiplier of 8.9); *Roberts v. Texaco, Inc.*, 979 F.Supp. 185, 197 (S.D.N.Y. 1997)(multiplier of 5.5); *In re RJR Nabisco Sec. Litig.*, No. 88-905, 1992 U.S.Dist.LEXIS 12702, at *16, 22 (S.D.N.Y. Aug. 24, 1992)(multiplier of six); *Cosgrove v. Sullivan*, 759 F.Supp. 166, 167 n.1, 169 (S.D.N.Y. 1991)(multiplier of 8.74).

resulted in a tremendous settlement after just two years of litigating. As Karen W. Ferguson, Director of the Pension Rights Center, states: "I am not aware of any other private law firm that could have obtained the relief secured by [Class Counsel] in this case." Ferguson Decl. ¶ 26. The class benefits from this speedy resolution in three ways:

*First*, the class will receive compensation and be able to invest those funds immediately, rather than waiting the better part of a decade as other classes in similar 401(k) excessive fee cases have had to do. In *Spano*, for example, the class waited nine years to see any recovery. *Spano*, No. 06-cv-743, Doc. 587, at 2 (settlement came after Class Counsel litigated for over nine years). Reaching the settlement now (as opposed to six to seven years later) gives the class a "head start" on benefitting from its recovery here.

*Second*, the affirmative relief (valued at nearly $70 million) will go into effect now, as opposed to several years from now, allowing the class to achieve remarkable savings in the future.

*Third*, by settling this case before it entered the formal discovery stage, Class Counsel avoided significant litigation costs and expenses to the class. These include the costs of depositions, experts, summary judgment, and trial. To date, Class Counsel has incurred just over $68,000 in costs and expenses. In *Spano*, by contrast, it incurred over *$1.8 million* in costs, which were ultimately reimbursed out of the settlement fund. No. 06-cv-743, Doc. 587 at 9. By settling when it did, Class Counsel obtained millions of additional dollars for the class.

### B.  The Court should also award reimbursement of Class Counsel's costs.

"Reimbursement of reasonable costs and expenses to counsel who create a common

fund is both necessary and routine." *Savani*, 121 F.Supp.3d at 576. As noted above, Class Counsel has kept costs to a minimum. The Court should award reimbursement of the $68,887.43 in costs and expenses Class Counsel has incurred to date.

### C. The Court should award named plaintiff case contribution awards.

"At the conclusion of a successful class action case, it is common for courts, exercising their discretion, to award special compensation to the class representatives in recognition of the time and effort they have invested for the benefit of the class." *Smith*, 2007 U.S. Dist. LEXIS 2392, at *11–12. "A substantial incentive award is appropriate in [a] complex ERISA case given the benefits accruing to the entire class in part resulting from [named plaintiff's] efforts." *Savani*, 121 F. Supp. 3d at 577. In this case, the named plaintiffs provided invaluable assistance to Class Counsel in prosecuting this case. By requesting and obtaining critical documents regarding the Plans, they aided Class Counsel's investigation and ability to prepare a detailed complaint that survived Defendant's motion to dismiss. They took great personal risk in bringing an action against a prominent company in their community. *Beesly*, 2014 U.S.Dist.LEXIS 12037, at *13–14 (risks of acting as named plaintiff in ERISA action include "alienation from employers or peers"). Thus, a case contribution award of $25,000 for each named plaintiff is reasonable and fair.

### III.   Conclusion.

For the foregoing reasons, the Court should (a) award Class Counsel attorneys' fees in the amount of $10,666,666; (b) award Class Counsel reimbursement of reasonable costs and expenses in the amount of $68,887.43; and (c) award each named Plaintiff $25,000 as a case contribution award for their assistance in prosecuting this case.

July 25, 2016                          Respectfully submitted,

                                       /s/ Jerome J. Schlichter
                                       SCHLICHTER, BOGARD & DENTON LLP
                                       Jerome J. Schlichter (MO Bar No. 32225)
                                       Troy A. Doles (MO Bar No. 47958)
                                       100 South Fourth Street, Ste. 1200
                                       St. Louis, Missouri 63102
                                       Phone: (314) 621-6115
                                       Fax: (314) 621-5934
                                       jschlichter@uselaws.com
                                       tdoles@uselaws.com

                                       /s/ Robert M. Elliot
                                       Robert M. Elliot (NC Bar No. 7709)
                                       Elliot Morgan Parsonage, PLLC
                                       426 Old Salem Road
                                       Winston Salem, North Carolina 27101
                                       Phone: (336) 724-2828
                                       rmelliot@emplawfirm.com

                                       Attorneys for Plaintiffs

                          CERTIFICATE OF SERVICE

       I hereby certify that on July 25, 2016, I electronically filed the foregoing with the
Clerk of the Court using the CM/ECF system, which sent notification of this filing to all
counsel of record.


                                       /s/ Jerome J. Schlichter